fjUNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ERIC JAY JABLONSKI,<br>　　　　　Plaintiff,<br>v.<br><br>OBLETON, *et al.*,<br>　　　　　Defendants.<br>_____/ | Case No. 23-13097<br><br>Susan K. DeClercq<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 16)**

**I.　PROCEDURAL HISTORY**

Plaintiff filed this lawsuit, without the assistance of counsel, on December 6, 2023, against six Michigan Department of Corrections ("MDOC") officials and employees. (ECF No. 1). Plaintiff, who is non-binary and uses they/them pronouns, alleges that the Defendants failed to protect them from sexual assault in violation of the Eighth Amendment. They assert that prison officials placed them in a cell with a non-gender dysphoric prisoner who sexually assaulted and raped Plaintiff. On March 15, 2024, the Defendants moved for summary judgment based on failure to exhaust administrative remedies. (ECF No. 16). Plaintiff responded (ECF No. 24), and Defendants replied (ECF No. 26). Defendants argue that Plaintiff filed no grievance through all three steps of MDOC's grievance process

about the claims alleged in the complaint, rendering the claims unexhausted. Plaintiff argues that they need not have exhausted the claims through the grievance process because the allegations about sexual assault fall under the Prison Rape Elimination Act ("PREA"), which does not require three-step exhaustion.

This case was referred to the undersigned for all pretrial matters on May 14, 2024. (ECF No. 21).

For the reasons below, the undersigned **RECOMMENDS** that the motion for summary judgment be **DENIED**.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce the obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of

3

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)]* and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

  B.  <u>Exhaustion under the PLRA</u>

  Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively

4

preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A

5

prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

    C.    <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 16-2, PageID.76, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the

6

Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.78, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.79, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

  D. <u>Analysis</u>

Plaintiff does not contest that they did not file a grievance about the actions alleged through the three-step grievance process. Plaintiff asserts that they were not required to follow MDOC's grievance process because the issue concerned sexual assault. The prison's grievance policy says, "Grievances filed regarding sexual abuse . . . shall not be processed as grievances under this policy but shall be reported in accordance with PD 03.03.130 "Prison Rape Elimination Act ("PREA) and Prohibited Sexual Conduct Involving Prisoners." (ECF No. 16-2, PageID.73, ¶ D). Thus, Plaintiff did not file a grievance. Plaintiff contends that the MDOC grievance policy contains contradicting statements so a prisoner "may not even be able to discern what steps they should follow in order to report and address sexual assault." (ECF No. 24, PageID.103).

7

In reply, Defendants assert that the prison's PREA policy's definition of sexual abuse covered by the Act does not include failure to protect a prisoner from conduct that meets the statute and policy. (ECF No. 26, PageID.134-35) (citing ECF No. 24, PageID.116). The PREA defines sexual abuse as sexual contact of a prisoner by a prisoner or of a prisoner by an employee. Since failure to protect from sexual abuse does not fall under PREA definitions and is not otherwise covered in the policy, they insist Plaintiff needed to exhaust claims through the grievance process.

In the view of the undersigned, Defendants have not established entitlement to judgment as a matter of law on exhaustion of administrative remedies.

First, Defendants' insistence that the PREA policy does not concern failure to protect is not accurate. The policy statement says the policy details the zero-tolerance standard toward all forms of sexual abuse and "outlines the Department's approach to preventing, detecting, and responding to such conduct." (ECF No. 24, PageID.115). Though the policy does not expressly address "failure to protect from sexual abuse," there are other places in the policy concerning prevention or protection from sexual abuse. For example, it states that all new employees must go through training on PREA risk assessment (*Id.* at PageID.118-19), and that all prisoners new to a facility must have a risk assessment during intake screening for their risk of being sexually abused by other prisoners (*Id.* at PageID.119, ¶ KK).

8

The results of the risk assessment are to be used in determining housing and bed assignments. (*Id.* at PageID.120, ¶ LL). So it is not true that the PREA policy is meant only to define and prohibit sexual abuse; it also sets forth the employee's obligation to assess, detect, prevent, and report sexual abuse. This is unsurprising because PREA requires MDOC to provide a mechanism for prisoners to report (1) "sexual abuse and sexual harassment," (2) "retaliation by other inmates or staff for reporting sexual abuse and sexual harassment," and (3) "*staff neglect or violation of responsibilities that may have contributed to such incidents*." 28 C.F.R. § 115.51 (emphasis added).

The PREA policy also mentions MDOC's grievance policy. There is an acknowledgment that the administrative grievance procedure was eliminated for grievances "regarding sexual abuse." (*Id.* at PageID.121, ¶ VV). That said, prisoners can use, but are not required to use, the administrative grievance procedure for claims of sexual harassment or retaliation. (*Id.* at ¶ WW). These statements, however, do not conclusively determine whether a claim about the prison's failure to protect from or prevent sexual abuse categorically falls under the PREA policy or the administrative grievance process.

This lack of clarity continues in the general grievance policy. As noted, the policy states, "Grievances filed *regarding sexual abuse* . . . shall not be processed as grievances under this policy." (ECF No. 16-2, PageID.73, ¶ D) (emphasis

9

added). Those kinds of claims fall under PREA. The policy does not explain what issues are considered "regarding sexual abuse." A reasonable person could have two (or more) interpretations of this language. "Regarding sexual abuse" could mean only, as Defendants suggest, physical acts of abuse. Or, it could be viewed more broadly. A reasonable person could read this and believe that preventing or protecting a prisoner from sexual abuse is an issue "regarding sexual abuse." If failure to protect is a matter "regarding sexual abuse," then Plaintiff need not exhaust the claim through the general grievance process.

Courts have recognized the contradictions and lack of clarity in the PREA and general grievance policies when something other than the physical act of sexual abuse is at issue. *See Jones v. Washington*, 2023 WL 7225011, at *4-5 (E.D. Mich. Oct. 11, 2023); *Haines v. Miniard*, 2023 WL 3559608, at *2-3 (E.D. Mich. Apr. 24, 2023); *Sims v. Ellis*, 2022 WL 446505 (W.D.N.Y. Feb. 14, 2022); *Frye v. Wilt*, 2017 WL 6405623 (M.D. Penn. Dec. 15, 2017). Judges in this District addressing these policy provisions called the PREA reporting procedure "'so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Haines*, WL 3559608, at *2 (quoting *Ross v. Blake*, 578 U.S. 632, 643-644 (2016)). In *Ross*, the Supreme Court explained that when a remedy is "essentially 'unknowable'—so that no ordinary prisoner can make sense

of what it demands—then it is also unavailable. Accordingly, exhaustion is not required." *Ross*, 578 U.S. at 644 (citations omitted).

Given the opacity in Plaintiff's obligation related to his complaint, the undersigned suggests that Defendants are not entitled to judgment as a matter of law for failure to exhaust administrative remedies. It is not clear that Plaintiff was required to use the three-step grievance process, or whether he needed to grieve his claim through the PREA process. Defendants did not address whether Plaintiff properly utilized the PREA grievance process. So the undersigned recommends that the motion for summary judgment be denied.

### III.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 16) be **DENIED**. If this recommendation is adopted, the undersigned further recommends that Defendants be given a deadline by which to answer the complaint.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: July 22, 2024                               s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 22, 2024.

12

                                                                       s/Sara Krause  
                                                                       Case Manager  
                                                                       (810) 341-7850